IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**WATERS EDGE LIVING, LLC,**
a Florida Limited Liability Company,
and **WATERS EDGE JW, LLC,**
a Florida Limited Liability Company,

    Plaintiffs,

vs.                               Case No. 4:06cv334-RH/WCS

**RSUI INDEMNITY COMPANY,**
a New Hampshire Corporation,
and **PRIME INCOME ASSET
MANAGEMENT, INC.,**
a Nevada Corporation,

    Defendants.
                              /

## O R D E R

Plaintiffs have moved to compel production of documents and responses to interrogatories. Doc. 355. Defendant RSUI Indemnity Company (RSUI) has responded. Doc. 363. Pursuant to my order, doc. 364, Plaintiffs have filed a reply. Doc. 368.

**Defendant's response, doc. 363**

The amended complaint contains six claims against RSUI. The first claim is that RSUI breached the settlement agreement that came into being in early 2006. *Id.*, pp. 9-

10.  Count II claims breach of the custodial trust account agreement that occurred to implement the settlement.  *Id.*, pp. 10-11.  Count III is entitled "breach of policy payment obligations."  *Id.*, p. 11.  The gist of this claim is that RSUI breached its policy obligation to make prompt payment after acceptance of proof of loss by placing Prime's name on the payment checks, thus preventing Plaintiffs from having use of the fund, and then by repudiating the payment and by paying amounts to Prime that were disparately greater than the percentage allowances to Plaintiffs.  *Id.*, p. 12.  Count IV alleges conversion because RSUI interpleaded the funds into a custodial account.  Count V alleges a breach of a duty of good faith.  Plaintiffs allege that RSUI settled for $31,969,023, but gave Plaintiffs a check for that amount with Prime's name on it, and then treated this money as "unexhausted policy proceeds" and interpleaded the sum.  *Id.*, p. 13.  Plaintiffs allege that RSUI breached a due of good faith by paying claims to Prime that should not have been paid, and treated Plaintiffs differently.  *Id.*  Count VI alleges deceptive insurance practices under Texas law.

    Defendant RSUI objects to discovery with respect to Count V.  Defendant argues that under Texas law, a claim premised upon a breach of a duty of good faith is outside the contract, and discovery as to such a claim must be abated until there is a determination of both liability and damages.  Doc. 363, p. 2.  RSUI contends that Count III is a simple breach of contract count, and argues that until liability under Count III, and specifically, the extent of damages is determined, discovery on Count V is premature.  Doc. 363, p. 3.

    The contract was delivered to Prime in Texas, and therefore, the law of Texas governs this diversity case.  Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496,

61 S.Ct. 1020, 1021-1022, 85 L.Ed. 1477 (1941) (choice of law rules of the state in which the federal court sits apply in a diversity case); State Farm Mut. Auto. Ins. Co. v. Roach, 945 So.2d 1160, 1163-1164 (Fla. 2006) (Florida rule of *lex loci contractus*, that the law of the place where the contract was executed, applies to an insurance contract).

Under Texas law, it is proper to abate discovery and grant a severance as to the bad faith claim until the insured prevails upon the breach of contract claim. Liberty Nat'l Fire Ins. Co. v. Akin, 927 S.W.2d 627, 629 (Tex.1996) ("Insurance coverage claims and bad faith claims are by their nature independent."). Thus, if RSUI had a pending unaccepted offer to settle Plaintiffs' entire contract claim, abatement of discovery with respect to the bad faith claim and severance of that claim would be proper under Texas law. *Id.*, at 629-630. *See, e.g.,* In re Progressive County Mut. Ins. Co., 2007 WL 416553 (Tex.App.-Beaumont Feb 08, 2007) (No. 09-07-011-CV). A severance is not warranted, however, if the evidence regarding the bad faith claim and the contract claim is essentially the same, or interwoven. Akin, at 630.

On July 21, 2006, RSUI "tendered payment in an amount agreed upon by itself and [Plaintiff]." Doc. 354, p. 2. "Payment was properly tendered for all undisputed amounts claimed by Waters Edge on July 21, 2006." *Id.*, p. 3. RSUI, therefore, has admitted liability (or made the issue of liability moot), agreed to the extent of damages (replacement costs and lost rents), and has interpleaded the funds. Even if this did not constitute a "payment" under the contract, RSUI makes no argument that the damages claimed by Plaintiffs are factually unsupported or that such damages are not covered by the insurance contract.

Further, Count III is not a claim that seeks to establish the extent of insured liability and damages under the contract.  That was established on July 21, 2006, as RSUI agrees.  Instead, Count III brings a claim arising from alleged collateral contractual duties to make prompt payment after acceptance of proof of loss.  It is alleged that RSUI did this by placing Prime's name on the payment checks, thus preventing Plaintiffs from having use of the fund, and then by repudiating the payment, interpleading the funds, and paying amounts to Prime that were disparately greater than the percentage allowances to Plaintiffs.  These allegations are essentially the same factual allegations as alleged in support of the bad faith claim in Count V.  The factual allegations are so interwoven that, under Texas law, a severance and abatement would not be granted.  A jury would not be confused by having to decide both claims, and RSUI would not be unfairly prejudiced, because the facts alleged in support of both claims are essentially the same.

If Florida law were to apply, the result would be no different.  Defendant relies upon Vest v. Travelers Ins. Co., 753 So.2d 1270 (Fla. 2000).  That case held that it is premature to bring a claim for bad faith pursuant to FLA. STAT. § 624.155(1) "until there is a determination of liability and extent of damages owed on the first-party insurance contract." 753 So. 2d at 1276.  Liability and the extent of damages are no longer at issue here.  That distinction was clearly explained in Plante v. USF&G Specialty Ins. Co., 2004 WL 1429932(S.D. Fla. Jun 2, 2004) (No. 03-23157-CIV):

> USF & G argues that there must be a determination of both liability and extent of damages owed on a first-party insurance contract before a bad faith claim may be ripe; according to USF & G, there has been no determination of the extent of damages, so Plante's bad faith claim is not yet ripe.  The sole basis for USF & G's contention is a single sentence from

the Court's opinion in *Vest v. Travelers Ins. Co.*, 753 So. 2d 1270, 1276 (Fla. 2000) ("[B]ringing a cause of action in court for violation of section 624.155(1)(b)1 is premature until there is a determination of liability and extent of damages owed on the first-party insurance contract.").

The *Vest* case did not in any way extrapolate upon the meaning of the "determination" of the "extent of damages." The only Florida Supreme Court case which discusses the instant situation – where the amount of damages is in dispute – is *Imhof v. Nationwide Mut. Ins. Co.*, 643 So. 2d 617 (Fla. 1994). In *Imhof*, the Florida Supreme Court held that an insured's breach of contract claim has been resolved sufficiently to bring a bad faith claim as long as the insurer has conceded liability on the claim, even when the insurer disputes the amount for which it is liable. *Id*. at 618. The Court required the plaintiff to allege that there had been a final determination as to extent of damages, but did not define "extent of damages" to require the plaintiff to plead a precise amount. *Id.* ("Neither *Blanchard* nor section 624.155(2)(b) requires the allegation of a specific amount of damages.").

In this case, the Plaintiff has plead that USF & G sent her a letter denying responsibility "for any additional monies beyond that which has already been paid." (Cmpt.¶ 40). According to the Complaint, USF & G has paid a fixed and final sum certain under all coverage applicable to Plante's loss. Accordingly, Plante has done what is required by *Imhof* – she has plead a final determination of liability and extent of damages.

USF & G suggests that this "final determination" must take place in a courtroom. Florida law does not require so much. *See Brookins v. Goodson*, 640 So. 2d 110, 112-14 (Fla. 4th DCA 1994), *rev. denied*, 648 So. 2d 724 (Fla.1994). In *Brookins*, a case quoted extensively in Vest, the court stated:

> [E]ngrafting a judicial requirement that a determination of damages by litigation must precede a first party bad faith claim would foster no stated legislative purpose, would lend to an absurd result and would needlessly increase the cost of litigation to both sides by requiring the insured to litigate the underlying action to conclusion. The result would foster litigation rather than promote settlement – it would promote form over substance.

*Id. Brookins* therefore suggests that when an insurer makes payment upon an insured's claim and refuses to pay any more, a "final determination" of liability and extent of damages has occurred for purposes of the bad faith statute.

2004 WL 1429932, *2-3.

>The Eleventh Circuit has followed the same logic, applying Florida law:
>
>Shulman's bad faith lawsuit itself asserts, "By paying a portion of Shulman's claims, Liberty Mutual has conceded coverage under the Policy for both claims, and a bad faith action is accordingly ripe."  By Shulman's own allegation, therefore, his bad faith action as to the First Loss was ripe at the time he had received Liberty Mutual's $24,386.03 in November 2002, whereby so paying, Liberty Mutual had admitted coverage liability.  *See, e.g., Blanchard*,[1] 575 So.2d at 1291 (explaining that a claim for bad faith accrues once the underlying contract action is resolved).  Furthermore, by agreeing to the settlement, Shulman also "resolve[d]" all claims between the parties regarding the First Loss.

Shulman v. Liberty Mut. Fire Ins. Co., 2006 WL 952327, *3 (11th Cir.2006) (not selected for publication in the Federal Reporter, No. 04-16681).

This resolves the only issues argued by Defendant in the response.  Since this discovery relates to the bad faith claim, objections based upon attorney-client privilege, work product privilege, or relevance are overruled.

There are other objections presented to the discovery, however, and Defendant has not expressly waived those objections.  These will be addressed sequentially.

**Request for production 4, first set**

Defendant objects to production of documents in response to request 4, arguing that the request seeks trade secrets.  Defendant has failed to show how this information would reveal trade secrets and has not moved for a protective order.  The motion to compel as to request 4 is granted.

---

[1] Blanchard v. State Farm Mut. Auto. Ins. Co., 575 So.2d 1289, 1291 (Fla.1991) (explaining that one prerequisite of a bad faith claim under Florida law is""a determination of the existence of liability").

**Interrogatories, first set**

General objections, that is, objections stated at the beginning of the response to the interrogatories, are ineffective and are an abuse of the discovery process because such objections block discovery without explaining why and to what extent. Prefatory general objections that have no narrative connection to a specific discovery request and the specific information sought are a nullity. FED. R. CIV. P. 34(b) provides in part:

> **(b) Procedure**.
>
> \*     \*     \*
>
> **(2)** *Responses and Objections*.
>
> **(A)** *Time to Respond.* The party to whom the request is directed must respond in writing within 30 days after being served. A shorter or longer time may be stipulated to under Rule 29 or be ordered by the court.
>
> **(B)** *Responding to Each Item.* For *each item* or category, the response must either state that inspection and related activities will be permitted as requested or state an objection to the request, *including the reasons*.
>
> **(C)** *Objections*. An objection to part of a request *must specify the part* and permit inspection of the rest.
>
> \*     \*     \*

FED. R. CIV. P. 34(b) (emphasis added). Further, N.D. LOC. R. 26.2(C)(1) provides that "[o]bjections and grounds for objections shall be addressed to the specific interrogatory, request for admission, or request for production, and may not be made generally."

**Interrogatory 1**

The answer fails to reveal the job title of Berri Jordan, and fails to list the particular responses to interrogatories as to which the person participated. The motion is granted as to this interrogatory.

**Interrogatory 2**

This interrogatory is not vague.  RSUI made the statements in document 68. Does RSUI currently believe that the statements are correct, and if not, why not?  If it has changed its position, it must "identify the persons who were involved in the decision to change its position, state when the decision to change its position was made, state what information (either new or previously available) was considered in reaching that decision, and identify any documents relating to the decision making process or regarding the decision to change its position."

Defendant also objected that the interrogatory called for attorney work product. While the objection now is overruled with respect to Count V, the legitimacy of this objection as it was made in the response to the discovery requests (and others like it) are relevant to the issue of whether Plaintiff should be awarded expenses of its motion. FED. R. CIV. P. 26(b)(3) provides in part:

> **(3) Trial Preparation: Materials**.
>
> **(A)** *Documents and Tangible Things*.  Ordinarily, a party may not discover *documents and tangible* things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).  But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> **(i)** they are otherwise discoverable under Rule 26(b)(1); and
>
> **(ii)** the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
>
> **(B)** *Protection Against Disclosure*.  If the court orders discovery of those materials, *it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation*.

\*          \*          \*

FED. R. CIV. P. 26(b)(3) (emphasis added).  Thus, work product generally relates to the production of documents.  If the court orders the documents to be produced, opinion work product is absolutely privileged.  United States v. Pepper's Steel & Alloys, Inc., 132 F.R.D. 695, 698 (S.D. Fla. 1990.

An interrogatory, *ipso facto*, does not seek documents, and thus this interrogatory does not seek the mental impressions of an attorney relating to the production of documents.  Hence, attorney work product is not implicated here.

This interrogatory seeks the contention of RSUI.  It does not require RSUI to speculate as to the contentions of someone else.  Contention interrogatories are not objectionable unless further discovery is needed, which is not the case here.  FED. R. CIV. P. 33(a)(2) provides:

> **(2)** *Scope*.  An interrogatory may relate to any matter that may be inquired into under Rule 26(b).  *An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time.*

FED. R. CIV. P. 33(a)(2) (emphasis added).

> "Contention" interrogatories are interrogatories that seek to clarify the basis for or scope of an adversary's legal claims.  The general view is that contention interrogatories are a perfectly permissible form of discovery, to which a response ordinarily would be required. *See, e.g., Taylor v. FDIC*, 132 F.3d 753, 762 (D.C.Cir.1997); *Vidimos, Inc. v. Laser Lab Ltd.*, 99 F.3d 217, 222 (7th Cir.1996).

Starcher v. Correctional Medical Systems, Inc., 144 F.3d 418, 421 n.2 (6th Cir. 1998), *aff'd sub nom.* Cunningham v. Hamilton County, Ohio, 527 U.S. 198, 119 S.Ct. 1915, 144 L.Ed.2d 184 (1999).

It is possible that this interrogatory seeks information protected by the attorney-client privilege, but RSUI has not made that argument and, in any event, that objection is no longer available with respect to discovery related to Count V.  But the failure to make a specific argument justifying invocation of the attorney-client privilege waives the privilege.  FED. R. CIV. P. 26(b)(5); Peat, Marwick, Mitchell & Co. v. West, 748 F.2d 540, 542 (10th Cir. 1984).

Thus the objections to this interrogatory are unpersuasive, and the answer is incomplete.  The answer simply recites the relevant contractual clause without expressing the opinion of RSUI related to Plaintiffs' claims.  A complete answer to this interrogatory is especially relevant to the bad faith claim.  The motion is granted as to interrogatory 2.

**Interrogatories 3, 4, 5, 6, 7, 8, and 9**

The objections to this interrogatory are without merit for the reasons discussed above as to interrogatory 2.  With respect to interrogatories 7 and 9, it is improper to provide discovery subject to objections or "without waiving" an objection.  If a party has a legitimate objection, it should be made specifically, identifying the aspect of the discovery that is improper and why.  If the discovery is provided, the objection is waived.  The opposing party cannot know what has been withheld if the responding party fails to connect the specific objection to the specific information requested.  Further, RSUI took a position when it answered interrogatory 7, so it cannot avoid an answer to interrogatory 8.  With respect to interrogatory 9, RSUI did not answer the question because it did not set forth its contentions relevant to Plaintiff.  The motion to compel is granted as to interrogatories 3, 4, 5, 6, 7, 8, and 9.

**Interrogatory 10**

The interrogatory is not vague or ambiguous, and it is not objectionable because it calls for a legal conclusion. Reference to the valuation provisions of the policy, without describing how those provisions answer the questions in this interrogatory, is not enough. The motion is granted as to interrogatory 10.

**Interrogatory 11**

The response to this interrogatory suffers from the same problems as discussed at length above. The questions are not vague. RSUI denied paragraph 19 of the complaint and surely it knows why. RSUI did set forth a number of the relevant policy clauses, but this is not an academic exercise. RSUI did not answer the questions. It did not explain its contentions as to how those clauses, or the clauses of the policies of the primary insurers, limit the liability of RSUI to Plaintiff for Plaintiff's specific claims. Moreover, a contention interrogatory is proper, the claim of attorney-client privilege has been waived by improperly asserting it (and does not apply to the bad faith claim discovery), and it is not proper to answer an interrogatory "without waiving" the objections. The motion is granted as to interrogatory 11.

**Interrogatory 12**

This interrogatory is not vague or ambiguous, and goes to the heart of an important issue in this case, whether there must be a prorated distribution of insurance proceeds. Restating that the limit is $80,000,000 does not answer the question as to whether and to what extent proration must occur. The motion is granted as to interrogatory 12.

**Interrogatory 13**

The answer has the same problems as many of the others. The answer reads like a law school discussion of what the policy might or might not cover. RSUI denied paragraph 26 of the amended complaint. It must answer this interrogatory exactly as it is written, and provide an answer that acknowledges that Plaintiff is a claimant under the policy with a specific set of facts underlying its claim. The motion is granted as to this interrogatory.

**Interrogatory 14**

The answer to this was incomplete. It does not identify the portions of the policy that required that the check be issued in part to Prime. It does not identify the persons making that decision, or the documents relied upon. RSUI must read the interrogatory again and answer it.

**Interrogatory 15**

The question is not vague. Plaintiff wants to know how Prime might have been involved in the decision to issue the check to Prime. The involvement might have required by the contract, or it might not. The answer to this question would help in answering interrogatory 14. The motion is granted as to interrogatory 15.

**Interrogatory 16**

The answer to interrogatory 1 does not answer this interrogatory. The motion is granted as to interrogatory 16.

**Interrogatory 17**

This interrogatory seeks the names of persons authorized to approve and direct payment of claims under the master policy, and asks who specifically performed those

functions for claims by Plaintiffs and Prime.  The objection that this is vague, ambiguous, calls for speculation, or calls for a legal conclusion is utter nonsense, and the answer to interrogatory 1 does not answer this interrogatory.  The motion is granted as to interrogatory 17.

**Expenses**

Paragraph 7 of the initial scheduling order, doc. 24, provides:

> **Rule 37 Awards of Motion Expenses.**  The Court will ordinarily award counsel fees for time spent in filing (and arguing) a motion to compel if such a motion is necessary to make the recalcitrant party respond, or for time spent in opposing (and arguing) such a motion that is found to be unnecessary or without basis.  Certification of all discovery requests, responses, and objections is required under Rule 26(g), and violations thereof will be subject to sanctions.

FED. R. CIV. P. 37(a)(5)(A) provides:

> **(5) Payment of Expenses; Protective Orders**.
>
> **(A)** *If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing)*. If the motion is granted – or if the disclosure or requested discovery is provided after the motion was filed – the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
>
> **(i)** the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>
> **(ii)** the opposing party's nondisclosure, response, or objection was substantially justified; or
>
> **(iii)** other circumstances make an award of expenses unjust.

FED. R. CIV. P. 37(a)(5)(A).  "A court must impose attorney's fees and expenses when compelling discovery unless the party was substantially justified in resisting discovery. Substantially justified means that reasonable people could differ as to the

appropriateness of the contested action." Maddow v. Proctor & Gamble Co., Inc., 107 F.3d 846, 853 (11th Cir. 1997), *citing* Pierce v. Underwood, 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988).

The objections raised by Defendant were lengthy and complicated, but none were "substantially justified." There is nothing debatable about any of it, and Plaintiffs have prevailed as to every issue. Defendant's objections have caused Plaintiffs the expense of filing over 30 pages of detailed arguments. Rather than impose my usual order imposing an estimated partial award of expenses, Plaintiffs should be made completely whole for pursuit of this discovery.

Accordingly it is **ORDERED** that:

1. Plaintiffs' motion for to compel, doc. 355, is **GRANTED**. On or before **Friday, May 2, 2008**, Defendant shall produce for inspection and copying all of the documents identified in request for production 4, first set, and shall serve complete responses to the interrogatories in compliance with my findings above.

4. Pursuant to FED. R. CIV. P. 37(a)(4)(A), Plaintiffs are awarded reasonable expenses incurred including attorney's fees for all expenses in pursuit of this discovery. On or before **May 30, 2008**, Plaintiffs shall serve and file a claim for expenses, including attorney's fees. The claim shall comply with N.D. FLA. LOC. R. 54.1(E)(1)-(3). Plaintiffs may claim expenses and attorneys fees for pursuit of an award of attorneys fees and expenses.

5. On or before **June 20, 2008,** Defendant shall comply with N.D. FLA. LOC. R. 54.1(E)(4).

6. On or before **July 3, 2008**, Defendant shall comply with N.D. FLA. LOC. R. 54.1(E)(5).

7.  The Clerk shall return this file to me on **July 3, 2008**.

**DONE AND ORDERED** on April 22, 2008.

s/    William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**